IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELIZABETH D. BOX                                                                  PLAINTIFF

v.                                No. 4:03CV00876 GH

PULASKI CO. SPECIAL SCHOOL DISTRICT                             DEFENDANT

## **ORDER**

On November 4, 2003, plaintiff filed a pro se complaint, under Title VII and the Americans with Disabilities Act ("ADA"), alleging sex discrimination and perceived disability after an on-the-job injury by defendant in failing to provide her necessary training and certification in order for her to do her job. She asserts that defendant refused to allow her to attend training and certification classes and threatened termination if she attended those classes at her own expense. Plaintiff continues that she has consistently and unfairly been given poor evaluations and discipline. As relief, plaintiff requests paid training and certification and damages through a jury trial.

On December 30th, defendant filed a motion for summary judgment supported by brief, affidavit, deposition excerpt and a separate statement of undisputed facts. It contends that plaintiff cannot establish a prima facie claim for sex discrimination since none of the events she complains of constitute an adverse employment action and that it had legitimate, non-discriminatory reasons for its actions. As to the ADA claim, defendant again asserts that plaintiff is unable to establish a prima facie case as she is not disabled nor regarded as such as defined by the ADA and that she has not suffered an adverse action due to any alleged disability.

-1-

Plaintiff filed a pro se response on January 21st that she had little time to seek legal advice due to illness and had experienced much retaliation over this case from her employer. She continued that there is evidence when the employer said "it" was because she is a woman.

By order filed on January 26th, the Court appointed counsel for plaintiff,[1] granted permission for a supplemental response to be filed, and set a hearing on the summary judgment motion which was held on March 4th.

Prior to the hearing on the morning of March 4th, plaintiff, through her appointed attorney, filed an amended and substituted response to the summary judgment motion as well as brief, exhibits and a controverting statement. A second amended and substituted response with supporting materials was later filed that same date.

Plaintiff asserts that she was discriminated against on the basis of her sex and her perceived disability when she was denied certain training opportunities and when she was not allowed to check out equipment to use on her own vehicle as her male counterparts were permitted to do. She contends that when she was hired as a diesel mechanic helper in 1999, the men protested wanting to know what they were suppose to do with this woman and she met resistance with the men in both shops. Plaintiff has testified that she was the only female to hold the position of diesel mechanic and in 1999 or 2000 was denied the opportunity to train two consecutive years and was the only one left off the list for training; she was daily harassed by the men in the shop by them saying that she could not do the job because she was a woman and needed help; she was not allowed to go to training by the Arkansas School Bus Mechanics Association in June 2003 and 2004 in order to get her

---

[1] The order provided that, as plaintiff is not proceeding as an indigent, she is responsible for paying Austin Porter's fees and costs in representing her in this lawsuit

certification which has put her at a disadvantage; she is required to have a certain number of hours of training per year which she has not met; and she was told that since she was only going to be doing filing that the district would not spend the money training her.

She continues that she was placed on light duty after being off work for six months as a result of a back injury which restricted her to filing and so was advised around March 17, 2003, when she returned and received a poor job evaluation that due to the fact that she was on light duty and had not returned to her duties as a mechanic, she would not be permitted to go to the June training, but she responded that she had every intention of returning to her duties as a mechanic and wanted to attend training, but was refused due to the perception she was disabled and because she was a woman. When she was off light duty and asked to attend training at her own expense, she was advised that she would be terminated for insubordination if she did. Plaintiff also maintains that she was treated differently for not being allowed to borrow the district equipment. She said in the eight years she had worked there she witnessed other guys such as Henry Hawkins and Bob Frederick borrow a hoist to work on their own vehicles after using the sign in/out sheet, but when she requested to borrow a hoist for her own car in March of 2003, she was denied the opportunity.

Plaintiff also testified that when she was initially hired, males hired after her were paid more and were given promotions over her to higher paid positions until she was promoted to diesel mechanic in June 2000; that she was subjected to sexual harassment in the South Shop from a co-worker in 1999 or 2000, her supervisor at the time took a cavalier attitude towards the conduct, and other co-workers began to shun her when they found out about that complaint resulting in her request – which was granted – to be transferred to the North Shop; the female supervisor there would make comments about her make-up, commented that she was a mechanic and not a woman when a person

at a print shop got upset that they had sent a woman over to pick up heavy boxes; she was given a poor evaluation based on her dress; she began to experience sexual harassment from Henry Hawkins and so filed an EEOC charge in 1999; and Bob Frederick would not allow her to have a hoist to do heavy lifting but would tell co-workers to do it for her creating a hostile atmosphere.

On May 6th, defendant filed a reply that plaintiff's assertions of material issues of fact, based exclusively on her deposition testimony, are that males hired after her received higher pay; male employees had received promotions that she was denied because they had attended training sessions that she was not permitted to attend; that the refusal of plaintiff's supervisor to allow her to attend training courses resulted in her being ineligible for promotions, and she was regarded as being disabled because defendant restricted her to performing only light duty. Defendant counters that since plaintiff was employed, it has not hired any male who received higher starting pay than plaintiff; all male employees in plaintiff's department and job classification who are more highly paid than plaintiff receive the higher pay because they have more seniority than her; and there have been no promotions in plaintiff's department since March 1999 although all mechanics including plaintiff received across-the-board upgrades in 2000 so no employees could have been promoted ahead of plaintiff due to attending a training session in 2003. In support of the reply, defendant attached a supplemental affidavit reflecting that when plaintiff was hired as a mechanic helper on August 24, 1998 plaintiff was making $7.89 per hour and is currently making $19.70 per hour and the attached pay schedule reflects that any difference in pay is based on seniority with no male hired in the same position after plaintiff receiving higher pay.

It continues that even if plaintiff's deposition is construed in a light most favorable to her, she was not refused permission to attend training in 2003 because of her sex and that fact that she

did not attend training did not make her ineligible for promotion since she was upgraded from mechanic helper to diesel mechanic in 2000 and plaintiff could not have applied for any promotions in her department since 1999 because there were no promotional opportunities during that time. Defendant takes issue with plaintiff's assertion that she is ineligible for promotion by not being allowed to attend a training course in 2003 since she has met the minimum qualifications for the only promotional opportunity in her department as diesel mechanic foreman since she attained five years experience in 2001, has a high school diploma or GED, has completed a vo-tech diesel mechanic class with a grade of "B" or better, has a commercial driver's license, and passed drug/alcohol testing and such a promotion would be governed by the policy that all applicants who meet the minimum qualifications are interviewed by a biracial interview committee which selects the best qualified candidate for the position based on the interview scores.

It also states that until 2000, mechanics were only permitted to attend the annual training session conducted by the state every other year due to the need to complete necessary vehicle repair work in the department and after 2000, it was decided to allow all employees working without medical restriction to attend the training every year since the district was reimbursed for the charges by the state, not every mechanic has attended the training program every year, and some male mechanics have missed the training sessions for various reasons. Defendant also maintains that no state or federal law requires mechanics employed by defendant to be certified, but plaintiff meets the minimum qualifications mandated by defendant itself. It states that the annual training is not mandatory since it is not required to maintain the certification required by defendant and plaintiff was not the only mechanic who did not attend the June 2003 class. Defendant submits that plaintiff was not enrolled in the June 2003 training because she had been on medical leave from October 2002

-5-

through March 2003, upon her return she was placed on light duty by her medical providers, the time for enrollment in the class occurred while she was on light duty, she was not registered since defendant does not send employees to training when they are on medical leave or have restrictions on their job duties, and when she returned in late March of 2003, she was restricted by her physician to duties that did not require heavy lifting which is an essential requirement of a mechanic's job duties. Defendant points to plaintiff's deposition where she conceded that she was not permitted to attend the June 2003 training because she was on light duty at the time; that she agreed that she is currently certified to be a mechanic for defendant; that at the same time she states that she was not allowed to go to training because she was a woman she also said it was because she had been on medical leave and was on light duty. It contends that in the face of defendant's legitimate non-discriminatory reason of not sending mechanics to training who are on light duty, plaintiff has only a vague reference to a comment by an unnamed employee at an unspecified time and place that she was not sent to training because she was a woman when she has admitted that she was told that it was because she was on light duty. Moreover, defendant reiterates that plaintiff has not suffered an actionable adverse employment action.

Defendant also states that it is undisputed that plaintiff was on medical leave from October 2002 through March 2003 and on a number of different occasions submitted physician statements – October 10, 2002, October 18, 2002, November 6, 2002, December 17, 2002, January 7, 2003, February 13, 2003, April 17, 2003, June 3, 2002, and May 18, 2004 – which restricted her to light duty jobs only and there is no evidence that she was regarded as being disabled. In addition, she is not limited in any major life activities and has not offered proof of any adverse employment action such as a reduction in title, salary, benefits or any material change in her employment status.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56. "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

Local Rule 56.1 provides that a party moving for summary judgment must file a separate, short and concise statement of material facts as to which it contends there is no genuine issue to be tried. The rule further provides that unless the non-moving party files a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried, all material facts set forth in the moving party's statement will be deemed admitted.

Defendant's Local Rule 56.1 statement is set out below with plaintiff's response in brackets:

1. On or about August 5, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, a copy of which was attached to her Complaint in this Court. In her charge, Plaintiff alleged as follows:

> I was hired in February 1998, as Diesel Mechanic. In October 2002, I suffered an on the job injury and restricted to light duty. On March 17, 2003, I was allowed to return to work in a light duty position. I received an unsatisfactory appraisal the same day. On April 9, 2003, I was questioned about when I would return to full duty. On April 29, 2003, I received a full

        release from my physician. On June 6, 2003, I was informed that I would not be attending training as were my co-workers. I was also not allowed to check out equipment like my co-workers. The Director told me that they did not have any light duty positions. He then told me that I would not be attending training and could not check out equipment because I was on light duty. I believe that I was given a poor evaluation and not allowed to attend training because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because I am regarded as disabled, in violation of the Americans with Disabilities Act of 1990, as amended.

        [Admit.]

2. The mechanics training class offered in early June 2003 was an annual class offered by the Arkansas Department of Education for school district mechanics. This training is not mandatory; as such, not all mechanics employed by the District attend the training every year. [Deny. The plaintiff testified that she was the only mechanic not allowed to attend the training, and she was told that it was due to her being a woman. Furthermore, the plaintiff testified that as diesel mechanics, you are required to obtain a certain number of hours of training per year.]

3. Not all of the mechanics employed by the District attended the June 2003 training because the training was not required in order for the mechanics to maintain the required certification. [Deny. The plaintiff testified that she was the only mechanic not allowed to attend the training, and she was told that it was due to her being a woman. Furthermore, the plaintiff testified that as diesel mechanics, you are required to obtain a certain number of hours of training per year.]

4. Plaintiff was on medical leave due to a medical condition from October 2002 through March 2003. [Admit.]

5. When Plaintiff returned, she was on light duty. [Admit.]

6. Because Plaintiff was on light duty at the time the District notified the State of the mechanics who would be attending the training, the District did not include Plaintiff on the list for training. [Deny. At the time of the training, the plaintiff had been taken off light duty, and should have been permitted to attend the training. Nevertheless, even if the plaintiff was on light duty at the time the district notified the association as to who would be attending, in that the training did not require any manual work, the plaintiff still should have been allowed to attend.]

7. The District does not send employees to training when they are on medical leave or have restrictions on their job duties. [Deny.]

8. After Plaintiff returned to work in late March, 2003, she was returned to work on the condition that she not perform any heavy lifting, which is an essential requirement of the mechanics' job duties. [Deny. Mechanics use hoists to perform their duties, and dollies, and other types of equipment designed for lifting. When the plaintiff asked to be allowed to use such equipment, she was denied, and her supervisor would make her male co-workers assist the plaintiff with her heavy lifting, thus creating animosity towards the plaintiff.]

9. Plaintiff remains certified to perform mechanics duties for the District; as such, the fact that Plaintiff did not attend the June 2003 training had no impact whatsoever on her mechanic certification or Plaintiff's ability to perform her job. [Deny. In order for the plaintiff to be up on changing technology in the field of diesel mechanic, she must attend training yearly, to keep her certification intact. State and Federal regulations require that diesel mechanics have so many hours per year of additional training. Due to the fact that the plaintiff was not allowed to attend these training sessions in 2003 and 2004, this hampered her ability to

perform her job. Due to not attending the training sessions, there were some certifications that the plaintiff did not receive, which put her at a disadvantage to her male counterpart.]

10. The District has not used the negative performance evaluations received by Plaintiff over the last couple of years to change the terms and conditions of her employment in any manner, and Plaintiff remains employed by the District. [Admit.]

11. Plaintiff has lost no pay as a result of the negative evaluations. [Admit.]

12. Plaintiff has not been recommended for termination from her job, and her evaluations have not affected her pay or job status. Indeed, Plaintiff has agreed that the purpose of the evaluation is to help the employee improve and identify areas in which the employer seeks to have the employee improve her performance. [Admit.]

13. Under District policy, personal use of District equipment is not permitted. [Deny. The practice has been that for those employees desiring to use shop equipment would simply sign out the equipment, and when they return it, sign the equipment back in. However, when the plaintiff wanted to use the shop equipment (hoist) to repair her vehicle, she was denied this opportunity. Although the district later tried to change the policy reflecting that no shop personnel would be permitted to borrow equipment, it still happens.]

14. When District administration is made aware that personal use of District property has occurred or is contemplate, steps are taken to insure that the property is not utilized for personal use. [Deny.]

15. Plaintiff is not disabled as defined by the ADA. Plaintiff does not have a substantially limiting physical or mental impairment, a record of such an impairment, and has not been

regarded as having such an impairment. [Deny. Plaintiff was not allowed to attend training due to Brad Montgomery's perception that the plaintiff was disabled.]

16. Plaintiff is not limited in any major life activities. [Admit.]

17. Plaintiff was not regarded by the District as suffering from any disabilities as defined by the ADA. [Deny.]

18. Plaintiff has not suffered an adverse employment action due to any alleged disability. [Deny. The plaintiff was not permitted to use a hoist to assist her in performing her job duties. Furthermore, as mentioned herein, the plaintiff was not allowed to attend training.]

19. Plaintiff has lost no pay as a result of any actions allegedly taken against her by the District. [Admit.]

The recent case of Cherry v. Ritenour School Dist., 361 F.3d 474, 478-479 (8th Cir. 2004), sets out the framework to be followed here on plaintiff's sex discrimination claim:

> Under the McDonnell Douglas approach, the plaintiff must establish a factual presumption of intentional discrimination. Id. at 142, 120 S.Ct. 2097. In Cherry's case, that required evidence (either direct or circumstantial) that: (1) she was a member of a protected group, (2) she was meeting the legitimate expectations of her employer, (3) she suffered an adverse employment action, and (4) there are facts that permit an inference of discrimination. Taylor v. Southwestern Bell Tel. Co., 251 F.3d 735, 740 (8th Cir. 2001). If Cherry satisfies this burden, the School District must articulate a legitimate, nondiscriminatory reason for its employment action. Reeves, 530 U.S. at 142, 120 S.Ct. 2097. The burden on the School District is one of production, not persuasion. Id. If the School District articulates such a reason, the "presumption of intentional discrimination disappears, but [Cherry] can still prove disparate treatment by, for instance, offering [direct or circumstantial] evidence demonstrating that [the School District's] explanation is pretextual." Raytheon Co. v. Hernandez, --- U.S. ----, ---- n. 3, 124 S.Ct. 513, 518 n. 3, 157 L.Ed.2d 357 (2003). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
>
> ****

As here, " '[p]robably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment.' " Id. (quoting 1 Lex K. Larson, Employment Discrimination § 8.04 (2d ed.2001)). "The test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." EEOC v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. at 776.

In addition, the appellate court has also stated, in Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994), that:

> "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.... Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." Elrod, 939 F.2d at 1470 (internal quotation omitted); see also Clay v. Hyatt Regency Hotel, 724 F.2d 721, 725 (8th Cir. 1984) ("While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination.").

Based on the record, the Court must agree with defendant that plaintiff cannot establish a prima facie case under Title VII. Although she claims that the denial of training has resulted in her not receiving certain certifications putting her at a disadvantage to her male counterparts, has hampered her ability to do her job and is in violation of federal and state requirements, she failed to identify exactly what certifications she had not received and could not identify the federal and state provisions on which she was relying even though she was closely questioned about these subjects. Plaintiff admitted in her deposition that she remains certified to perform mechanics duties for defendant and she has not countered the documentary evidence submitted by defendant that reflects that her testimony about promotions and higher pay is simply not accurate.

As defendant has correctly argued, plaintiff's claim that she was denied training is not an adverse employment action. In <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 737 (8th Cir. 2004), the appellate court held:

> When Griffith returned to work in May 2000, he believed that his firefighting skills had deteriorated during his leave of absence. He declined one or more emergency assignments, asked for additional retraining, and claims the City unlawfully discriminated in refusing his request. On appeal, Griffith argues that summary judgment was improper on this claim because training is a necessary component of his job and there is a dispute whether adequate training was provided. This contention, too, is without merit. An employer's denial of an employee's request for more training is not, without more, an adverse employment action. See <u>Woodland v. Joseph T. Ryerson & Son, Inc</u>., 302 F.3d 839, 845 (8th Cir. 2002).

See also, <u>Tuggle v. Mangan</u>, 348 F.3d 714, 721-722 (8th Cir. 2003), where the plaintiff complained of discriminatory work assignments and deprivation of training in electrician duties,

> In this case, the district court rejected Tuggle's disparate treatment claim, deciding "Tuggle merely experienced dissatisfaction with her work assignments and training, not a material change in employment necessary to prove an adverse employment action." See also <u>Montandon v. Farmland Indus., Inc.</u>, 116 F.3d 355, 359 (8th Cir. 1997) (citation omitted) (stating "not everything that makes an employee unhappy is an actionable adverse [employment] action"); <u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 555 (5th Cir. 1997) ("Undesirable work assignments are not adverse employment actions.").

The same is true regarding plaintiff's negative performance evaluation. The Eighth Circuit explained in <u>Phillips v. Collings</u>, 256 F.3d 843, 848 (8th Cir. 2001):

> A poor performance evaluation, alone, typically does not constitute an adverse employment action. See <u>Spears v. Missouri Dep't. of Corrections and Human Res.</u>, 210 F.3d 850 (8th Cir. 2000) (holding an evaluation that was changed from "highly successful" to "successful" which "demeaned [plaintiff] in the eyes of her coworkers" is insufficient to transform an unfavorable evaluation into an adverse employment action); see also <u>Enowmbitang v. Seagate Tech. Inc</u>., 148 F.3d 970, 973-74 (8th Cir. 1998) (holding allegations of an unfair poor evaluation are insufficient to state a claim of discrimination where the poor evaluation was not used to plaintiff's detriment in any way); and <u>Cossette</u>, 188 F.3d at 972 (finding a negative "evaluation [which] resulted in a loss of status or prestige without any material change in [plaintiff's] salary, position, or duties" is not considered an adverse employment action).

In addition, plaintiff has not shown how not being able to take and use defendant's equipment for her own personal use would constitute an adverse employment action. She has acknowledged that defendant's official policy is to prohibit such personal use although she disputes the enforcement of that policy. Moreover, plaintiff testified that when she was later told to go ahead and use equipment anyway she declined to do so because she did not want the policy to then be enforced against her.

Turning to the ADA claim, the case of Kincaid v. City of Omaha, 378 F.3d 799, 804 (8th Cir. 2004), sets out the standard to be used:

> We analyze Kincaid's ADA discrimination claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir.1998). Under this framework, Kincaid must first establish a prima facie case of discrimination based upon a disability under the ADA. See id.
>
>> "To establish a prima facie case under the ADA, [Kincaid] 'must show that she is disabled within the meaning of the Act; [that] she is qualified to perform the essential functions of her job with or without reasonable accommodation; and [that] she suffered an adverse employment action because of her disability.' "
>
> Id. at 1072 (alteration in original) (quoting Webb v. Mercy Hop., 102 F.3d 958, 959-60 (8th Cir. 1996)). The burden then shifts to the City to proffer a legitimate, nondiscriminatory reason for the adverse employment action. See id. Once the City proffers such a reason, the burden shifts back to Kincaid to show that the City's stated reason is pretextual. See id.

As plaintiff is contending that she was regarded as disabled, an excerpt from the recent case of Wenzel v. Missouri-American Water Co., 404 F.3d 1038, 1040-1042 (8th Cir. 2005) involving perceived disability due to the ability to lift is very applicable here:

> Absent direct evidence, this court applies the McDonnell Douglas analysis to disability discrimination claims. Price v. S-B Power Tool, 75 F.3d 362, 364 (8th Cir. 1996), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must first establish a prima facie case: a disability within the meaning of

-14-

the ADA; qualifications to perform the essential functions of the job, with or without reasonable accommodation; and an adverse employment action due to a disability. See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316 (8th Cir. 1996). If the prima facie case is met, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Price, 75 F.3d at 365. Once the employer meets its burden, the plaintiff must show that the articulated reason is an illegal pretext. Id.

The threshold issue is whether Wenzel had a disability within the meaning of the ADA. Though all parties agree that Wenzel did not have an actual disability, he argues that Missouri-American "regarded" him as having a disability. 42 U.S.C. § 12102(2)(C).

Individuals who are regarded as having a disability, although not actually disabled, are protected by the ADA. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). "Regarded as" disability can occur in two ways: (1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or (2) the employer mistakenly believes that an actual impairment substantially limits one or more major life activity. Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001). The term "substantially limited" means "unable to perform" or "significantly restricted as to the condition, manner or duration under which" of performing a major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. Genthe v. Lincoln, 383 F.3d 713, 716 (8thCir. 2004).

Wenzel argues that Missouri-American misinterpreted his doctor's restrictions, thus regarding his ability to work as substantially limited. Missouri-American admits it misjudged the doctor's restrictions (as to permanency), but claims that the mistake related only to Wenzel's ability to perform one specific job.

Missouri-American may not, however, regard Wenzel as substantially limited in the life activity of working, that is unable to work a wide range of jobs. See Knutson v. Ag Processing, Inc., 394 F.3d 1047, 1051 (8th Cir. 2005). If Missouri-American regarded Wenzel as unable to perform "one particular job," there is no violation of the ADA. See Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). To demonstrate that Missouri-American regarded him as unable to perform a class of jobs, Wenzel emphasizes that there was no lifting requirement in the written job description for a Utility III, and that a Missouri-American manager testified that his injury substantially impaired a major life activity.

Despite the absence of a lifting requirement in his job description, Wenzel admitted that his position required heavy-lifting and working with a shovel, pickaxe, and jackhammer. Moreover, the record does not indicate Missouri-American later added these duties to a Utility III to exclude him from employment.

The manager's statement that Wenzel's ability to lift was substantially impaired does not indicate that the manager perceived him as unable to work in a class of jobs. A lifting restriction, without more, is not a disability. See Brunko, 260 F.3d at 941 (40-pound lifting restriction); Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998) (45-pound lifting restriction), cert. denied, 526 U.S. 1113, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999). "It logically follows then that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA." Conant v. City of Hibbing, 271 F.3d 782, 785 (8th Cir. 2001). An employer may decide that individuals with some limiting, but not substantially limiting, impairments are less than ideally suited for a particular job. Sutton, 527 U.S. at 490-91, 119 S.Ct. 2139. Missouri-American placed Wenzel on light duty believing he would resume working as a Utility III. Relying on the doctor's three monthly restrictions to lifting 35 pounds, Missouri-American believed his condition was permanent. See Ollie v. Titan Tire Corp., 336 F.3d 680, 686 (8th Cir. 2003). The record shows Missouri-American placed Wenzel on medical leave, believing he was unqualified for his job, not that he was disabled for a broad range of jobs.

Employers are free to make decisions based upon mistaken evaluations, "except to the extent that those judgments involve intentional discrimination." Edmund v. MidAmerican Energy Co., 299 F.3d 679, 685-86 (8th Cir. 2002). The purpose of the ADA was to combat " 'archaic attitudes,' erroneous perceptions, and myths" that disadvantage persons regarded as having a disability. Wooten, 58 F.3d at 386, quoting School Bd. of Nassau County v. Arline, 480 U.S. 273, 279, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). Wenzel fails to demonstrate that Missouri-American regarded him as having a disability.

When the legal analysis in Wenzel is applied to the undisputed facts, there is no evidence that plaintiff was regarded as having any disabilities as defined under the ADA. Plaintiff has admitted that she is not limited in any major life activities and her physician statements reflect that she was only placed on light duty due to lifting restrictions. Furthermore, plaintiff has failed to establish an adverse employment action. As stated above, denial of training is not an adverse employment action and plaintiff has not identified any specific law or requirement that she was denied certifications due to the lack of training.

In sum, there is simply no evidence to establish a prima facie case of sex discrimination or ADA discrimination.

Plaintiff is reminded that, as she not proceeding as an indigent, she is responsible for paying Austin Porter's fees and costs in representing her in this lawsuit.

Accordingly, defendant's December 30th motion (#23) for summary judgment is hereby granted.

IT IS SO ORDERED this 13th day of July, 2005.

*George Howard, Jr.*
UNITED STATES DISTRICT JUDGE